**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

DONALD R. PEVIA,

Plaintiff,

v.

FRANK BISHOP,
VAUGHN WHITEMAN,
OFFICER MURRAY,
JEFF NINES and
WAYNE HILL,

Defendants.

Civil Action No.: 24-3561-TDC

# MEMORANDUM OPINION

Self-represented Plaintiff Donald R. Pevia, an inmate currently confined at Western Correctional Institution ("WCI") in Cumberland, Maryland and formerly confined at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, has filed this civil rights action pursuant to 42 U.S.C. § 1983, in which he alleges that while he was at NBCI, Defendants Commissioner of Correction Wayne Hill, Warden Frank Bishop, Assistant Warden Jeffrey Nines, Lieutenant Vaughn Whiteman, and Correctional Officer II Murray violated his rights under the Eighth Amendment to the United States Constitution by requiring him to share with another inmate a cell that was designed for only one inmate. Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motion will be GRANTED.

**BACKGROUND**

Pevia alleges that NBCI is a "single cell prison," but he was forced to be double-celled. Compl. at 3, ECF No. 1. He asserts that on or about March 20, 2020, while he was in disciplinary segregation, he was placed in a cell with a cellmate and was involved in an "altercation" with the cellmate that caused him to sustain a severe back injury. Supp. Compl. at 3, ECF No. 8. At a later point, Pevia was given the option of allowing a cellmate to move into his cell with him or receiving a notice of infraction. Pevia then permitted a cellmate to be placed into his cell. According to Pevia, after he was confined with this cellmate for a "few days," they got into a fight. Compl. at 3. Pevia describes the fight as a "knife fight" prompted by his discovery of his cellmate masturbating while Pevia was sleeping. Supp. Compl. at 3. After approximately five minutes of fighting, a correctional officer came to the cell and called for assistance. Pevia and his cellmate were both taken to the medical unit for treatment.

Pevia asserts that Maryland Division of Correction Directive 110-6 "clearly states that ALL [disciplinary segregation] is to be single cell due to security concerns." *Id.* at 2. He further states that he has "already been successful" in a claim regarding double celling at NBCI. *Id.* (citing *Pevia v. Moyer*, No. 20-CV-3270-ELH (D. Md. Oct. 23, 2022)). He asserts that his success in that civil action is evidence that Defendants were aware of the security issues relating to double cells, and that they took steps to cover up their violations by "making false reports to allege that NBCI cells are in fact 80 square ft and NOT 60 square ft." *Id.* Pevia further claims that Defendants ignored the "ACA Standards" after he informed CO Murray and Lt. Whiteman that he was supposed to be in a single cell. *Id.* He notes that NBCI was "designed for the worst of the worst," so double celling of inmates in cells designed for one person creates a hostile environment. *Id.* at 3.

Construed liberally, Pevia's Complaint alleges a violation of the Eighth Amendment right to be free from cruel and unusual punishment based on a failure to protect him from a known risk to inmate safety. Pevia seeks compensatory and punitive damages, as well as unspecified equitable relief.

## DISCUSSION

In their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56 on the grounds that: (1) Defendants are entitled to immunity under the Eleventh Amendment to the Constitution for claims against them in their official capacities; (2) Pevia's claims are barred by the statute of limitations; (3) Pevia has failed to state claims for supervisory liability against Commissioner Hall, Warden Bishop, and Assistant Warden Nines; (4) Pevia has failed sufficiently to allege personal participation by Lt. Whiteman and CO Murray; (5) Pevia has failed to state a valid Eighth Amendment failure-to-protect claim; (6) Defendants are entitled to qualified immunity; and (7) Pevia's claims for equitable relief are moot. In response to the Motion, Pevia filed a pleading entitled "Motion for Summary Judgment," which does not seek summary judgment in his favor but instead requests that the Court deny Defendants' Motion. Opp'n at 11, ECF No. 28. Accordingly, Pevia's filing will be construed as a memorandum in opposition to Defendants' Motion, and the Clerk will be directed to correct the docket to reflect this determination.

## I. Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

When deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Courts must treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Defendants have attached an exhibit to their Motion. Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (quoting *Johnson v. RAC Corp.*, 491 F.2d 510, 515 (4th Cir. 1974)).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. To show that a reasonable opportunity for discovery has not been provided, the nonmoving party must file an affidavit or declaration under Rule 56(d), or an equivalent filing, explaining why, "for specified

reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). In opposing the Motion, Pevia has submitted his own exhibits and has substantively addressed Defendants' arguments without requesting discovery. Accordingly, the Court will construe Defendants' Motion as a Motion for Summary Judgment for purposes of the arguments requiring consideration of the submitted exhibits.

Under Rule 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with "all justifiable inferences" drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.*

## II. Official Capacity Claims

Although Pevia has not specified whether he is asserting any claims against Defendants in their official capacities, Defendants assert that any such claims must be dismissed because they are entitled to Eleventh Amendment immunity. Under the Eleventh Amendment, absent consent, a State, its agencies, and its departments are immune from suits in federal court brought by their citizens or the citizens of another state. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Claims against state officials in their official capacities are claims against the State

itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, any official capacity claims for damages are barred by the Eleventh Amendment. Although there is a limited exception to the Eleventh Amendment for certain claims for prospective injunctive relief that address ongoing violations of federal law, *see Indus. Servs. Grp., Inc. v. Dobson*, 68 F.4th 155, 163 (4th Cir. 2023), Pevia has not made any specific claims for injunctive relief and has not disputed Defendants' contention that any such claims are moot due to his transfer out of NBCI. Thus, any official capacity claims will be dismissed as barred by the Eleventh Amendment.

**III. Statute of Limitations**

Defendants assert that Pevia's claims are barred by the statute of limitations. As § 1983 does not include a limitations period, a court is to apply the limitations period applicable to the most analogous state law cause of action. *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379, 388 (4th Cir. 2014). For a § 1983 claim arising in Maryland, the applicable statute of limitations is the three-year general civil statute applicable to personal injury suits. *See Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999) ("It is well-settled that sections 1983 and 1985 borrow the state's general personal injury limitations period, which in Maryland is three years."); Md. Code Ann., Cts. & Jud. Proc. § 5–101 (West 2020) ("A civil action at law shall be filed within three years from the date it accrues . . . .").

Although the Maryland statute of limitations applies, when a cause of action has accrued is a federal question. *Nassim v. Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc). Accrual occurs when "the plaintiff knows or, in the exercise of due diligence, should have known both the existence and the cause of his injury." *Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738, 742 (4th Cir. 1990) (en banc). Thus, a claim accrues "when the plaintiff possesses

sufficient facts about the harm done . . . that reasonable inquiry will reveal [the] cause of action." *Nassim*, 64 F.3d at 955.

Defendants argue that even though Pevia's pleadings do not identify the date on which the second incident with a cellmate occurred, where he has alleged that the violation occurred while he was incarcerated at NBCI, his claim necessarily accrued prior to his transfer out of NBCI, which occurred more than three years ago. Defendants provide Maryland Department of Public Safety and Correctional Services ("DPSCS") records on Pevia's "traffic history" establishing that he was confined at NBCI during multiple periods between 2012 and October 14, 2021, after which he was transferred to Jessup Correctional Institution. DPSCS Records at 4, Mot. Ex. A, ECF No. 22-2. They therefore argue that October 14, 2021 is the latest possible accrual date for Pevia's cause of action. Thus, the three-year limitations period appears to have lapsed prior to the filing of the original Complaint on or about December 6, 2024, the post-marked date on the Complaint. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

Pevia, however, counters that the statute of limitations was tolled during the period when he was seeking to exhaust administrative remedies, as required by federal law. Under federal equitable tolling principles, a court may decline to enforce a statute of limitations period against a party where "due to circumstances external to the party's own conduct . . . it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Battle v. Ledford*, 912 F.3d 708, 718 (4th Cir. 2019) (quoting *Raplee v. United States*, 842 F.3d 328, 333 (4th Cir. 2016)). Equitable tolling is reserved for "rare instances." *Id.* For purposes of a federal § 1983 lawsuit, the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires exhaustion of administrative remedies before filing suit. *Id.*; *Ross v. Blake*, 578 U.S. 632, 642 (2016). Accordingly, the United States Court of Appeals for the Fourth Circuit has held that, as a

matter of equitable tolling principles, if a plaintiff prisoner is diligently pursuing available rights, the statute of limitations on the prisoner's § 1983 claim should be tolled for the time period during which the prisoner was pursuing the PLRA's required exhaustion of administrative remedies. *See Battle*, 912 F.3d at 715; *see also Fauconier v. Clarke*, 966 F.3d 265, 275 (4th Cir. 2020).

In the Maryland state prison system, exhaustion of administrative remedies requires that a prisoner first file an Administrative Remedy Procedure grievance ("ARP") with the warden of the prison within 30 days of the incident at issue. *See* Md. Code Regs. 12.02.28.05(D)(1) (2026) (requiring filing with the "managing official"); Md. Code Regs. 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for the management of a correctional facility"); Md. Code Regs. 12.02.28.09(B) (setting the 30-day deadline). Second, if the ARP is denied, or the prisoner does not receive a timely response, the prisoner must file an appeal with the Commissioner of Correction within 30 days. *See* Md. Code Regs. 12.02.28.14(B)(5). If that appeal is denied, the prisoner must file a further appeal within 30 days to the Incarcerated Individuals Grievance Office. *See* Md. Code Ann., Corr. Servs. § 10–206(a) (LexisNexis 2025); Md. Code Regs. 12.07.01.05(B).

Here, the parties have not provided documentary evidence establishing whether and when Pevia pursued and completed the ARP process. Where Defendants have not asserted that Pevia's claims should be dismissed based on a failure to exhaust administrative remedies, it is reasonable to infer that he did so. Where the statute of limitations is an affirmative defense, *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653 (4th Cir. 2006), and in the absence of such necessary information to establish the period of equitable tolling to comply with the legal requirement of exhaustion of administrative remedies, the Court will not dismiss Pevia's claims based on the statute of limitations.

## IV. Eighth Amendment Claim

Defendants also seek dismissal on the grounds that Pevia has failed to state a viable Eighth Amendment claim.

The Eighth Amendment protects prison inmates from "cruel and unusual punishments." U.S. Const. amend. VIII. Though an Eighth Amendment claim could arise from a failure to protect an inmate from an assault by another inmate, "not every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *See Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016). Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or a substantial risk of such an injury. *Id.* (quoting *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014)). Subjectively, the prisoner must establish that the prison officials exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). Such deliberate indifference exists if there was a substantial risk of serious harm that was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," and the prison official in question had been exposed to that information but did not reasonably respond to it. *Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016). Deliberate indifference also exists when prison officials were "aware that the plaintiff inmate face[d] a serious danger to his safety and they could avert the danger easily yet they fail[ed] to do so." *Id.* Where prison officials respond reasonably to the risk, they are not liable even if the harm was not ultimately averted. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

Here, Pevia has alleged that he sustained an objectively serious injury as a result of a fight with his cellmate. However, he has failed to allege facts demonstrating that Defendants acted with deliberate indifference to a known risk of harm. Pevia's allegation is that he shared a cell for a few days with another inmate before he awakened to his cellmate engaged in a sexual act and then engaged in a fight with the cellmate. He provides no facts or evidence demonstrating that this cellmate presented a specific risk of harm to him of which Defendants were aware. For example, he has provided no facts showing that his cellmate had been identified as an enemy of Pevia, or that Pevia had informed Defendants or other correctional officers that he had been threatened by the cellmate, or that he had a reason to fear that his cellmate would assault him. He also has alleged no facts showing that the cellmate was known to prison officials to act in a violent manner toward cellmates or other inmates. Although Pevia asserts that there was a prior incident in which he got into an altercation with a cellmate, he does not claim that the second incident involved the same cellmate.

Further, Pevia has not even alleged that the cellmate initiated the fight. He has also acknowledged that a correctional officer came and stopped the fight, and he has made no allegation that the response by correctional staff was so inadequate as to establish deliberate indifference by Defendants. Thus, Pevia has not alleged a viable claim of a failure to protect him from a known threat to his safety from his cellmate.

Pevia's Eighth Amendment claim appears to rest primarily on a broader claim that his placement in a double cell with any cellmate, regardless of any known risk of danger from the particular cellmate, by itself demonstrates deliberate indifference to a known risk to inmate safety. He has not, however, provided sufficient facts to support a claim that Defendants were aware of such a known risk based only on the fact of double celling. In support of his claim, Pevia relies

on a Maryland Division of Correction Directive ("DCD"), issued in 1980, stating that "inmates housed on segregation will be provided single occupancy cells that approximate those cells provided the general population inmates, where it is possible." DCD No. 110-6 at 1, Opp'n Ex. 2, ECF No. 28-2. Pevia asserts that he showed that policy to CO Murray before his placement in a double cell that resulted in the fight underlying the present case, but CO Murray and Lt. Whiteman disregarded that policy. However, the current DCD, issued on October 1, 1995, supersedes the September 1, 1980 rule and provides that "[i]nmates on disciplinary segregation may be housed in double cells unless security considerations based on an inmate's behavior dictate single celling." *See* DCD 110-6.VI.B, https://dpscs.maryland.gov/publicinfo/policy/policy.shtml (last visited Sept. 17, 2026). Thus, to the extent that Pevia showed the outdated 1980 directive to any of Defendants, that notification did not demonstrate that their placement of Pevia in a double cell constituted deliberate indifference to a known risk to inmate safety.

Pevia also asserts that the risk was known based on a ruling by the United States District Court for the District of Maryland in *Pevia v. Moyer*, No. 20-3270-ELH (D. Md.) ("*Pevia I*") that the double celling at NBCI is unconstitutional. In that case, Pevia asserted a substantially similar claim by arguing that his placement with a cellmate in a cell allegedly designed to hold only one person, and which was approximately 60 square feet in size, was unconstitutional because it endangered his safety due to the threat that cellmates would end up fighting. *See Pevia I*, Mot. Dismiss Mem. Op. at 3–4 (D. Md. Oct. 3, 2022) (ECF No. 33). Although the court (Hollander, J.) denied a Motion to Dismiss in relation to this issue, it did not find that NBCI's double celling was unconstitutional, and no final judgment was entered in favor of Pevia. *Id.* at 10–16. Rather, the case was resolved by a settlement on or about April 18, 2024. *See Pevia I*, Settlement Order at 1 (D. Md. Apr. 18, 2024) (ECF No. 74).

Pevia further argues that the Fourth Circuit has ruled that it is "cruel to double cell inmates in a cell designed for one inmate" but does not directly cite any case law from that court. Opp'n at 6. Rather, he has submitted a document that references certain case law, including *Nelson v. Collins*, 659 F.2d 420 (4th Cir. 1981), which vacated a district court order disapproving of double celling and double bunking and held that to the extent that the district court's orders "sought to declare that double celling" was "not 'permissible' under federal constitutional law, they were in error." *Id.* at 429. *Nelson* relied in part on the United States Supreme Court's ruling in *Rhodes v. Chapman*, 452 U.S. 337 (1981), which held that double celling is not generally unconstitutional under the Eighth Amendment and that the specific conditions at issue, which included two inmates sharing a 63-square-foot cell and spending most of their time in the cell, did not violate the Eighth Amendment. *Id.* at 343–44, 352; *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) ("It is clear that double or triple celling of inmates is not per se unconstitutional."). Under *Rhodes*, Pevia's claim that the NBCI cells are unconstitutionally too small to house two inmates, even if they are only approximately 60 square feet in size, necessarily fails. *Rhodes*, 452 U.S. at 343–44, 352.

Finally, Pevia has submitted declarations from several NBCI inmates who assert that they have witnessed fights involving cellmates, ostensibly to demonstrate that Defendants were aware of a known safety risk arising from the double celling. These inmates, however, recounted instances in which they or others could not get along with their cellmates and requested a move because of the incompatibility, but those requests were denied. One of the declarants asserts that he has seen Lt. Whiteman refuse to move a cellmate after being informed that "they were not getting along." Griffin Aff. at 1, Opp'n Ex. 4, ECF No. 28-4. Here, however, as discussed above, Pevia has provided no facts showing that he informed Defendants that he was not getting along with his cellmate prior to the assault. While one of the declarants references a general observation

that cellmates fight over the fact that there are limited electrical outlets in the cells, Pevia has not claimed that the assault was based on that issue and in fact has offered a different explanation. These examples thus demonstrate that, at most, correctional officers must consider moving a cellmate when they are informed that there is a specific disagreement or problem that could pose a threat to inmate safety, not that the practice of double celling is known to cause an inherent, serious risk to inmate safety. Pevia has therefore failed to assert sufficient facts to support a claim of deliberate indifference to inmate safety based on his placement in a double cell.

## V. Qualified Immunity

Defendants have also raised a qualified immunity defense. Determining whether an official is entitled to qualified immunity involves a two-part inquiry: "(1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Halcomb v. Ravenell*, 992 F.3d 316, 319 (4th Cir. 2021) (quoting *Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 898 (4th Cir. 2016)). If the answer to either of those questions is no, then the officer being sued is entitled to qualified immunity. *Putman v. Harris*, 66 F.4th 181, 186 (4th Cir. 2023). A court "may address the questions in 'the order of decisionmaking that will best facilitate the fair and efficient disposition of each case.'" *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 242 (2009)).

A right is clearly established if existing precedent—either controlling case law or a "consensus of persuasive authority" from other circuits—has placed the question beyond debate. *Booker v. S.C. Dep't of Corrs.*, 855 F.3d 533, 544–45 (4th Cir. 2017). While this standard does not require "a case directly on point," the case law must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (citations omitted).

There is no clearly established law based on Supreme Court or Fourth Circuit precedent, or a consensus of persuasive authority, that the Eighth Amendment bars placement of two inmates in disciplinary segregation into a single cell, even one that is approximately 60 square feet in area, based on the risk of violence between cellmates. Rather, the Supreme Court has concluded that placing two inmates in such a cell is not ordinarily unconstitutional. *See Rhodes,* 452 U.S. at 343–44, 352. Where Pevia has not alleged facts sufficient to show any other basis to support a conclusion that Defendants had knowledge that Pevia's double celling presented a substantial risk to inmate safety, as required for an Eighth Amendment failure-to-protect claim, the Court finds that Defendants are entitled to qualified immunity from Pevia's claims. The Motion will be granted on this basis as well.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment will be GRANTED, and final judgment will be entered in favor of Defendants. A separate Order shall be issued.

Date: September 17, 2026

THEODORE D. CHUANG
United States District Judge